**WO** JDN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Charles Welvon Eaden, Jr., | ) | No. CV 04-0952-PHX-MHM (CRP) |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| John Gantt, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Charles Welvon Eaden, Jr., an inmate in the custody of the Arizona Department of Corrections (ADC), filed this civil rights action pursuant to 42 U.S.C. § 1983 against John Gantt and Ben Kartchner, police officers with the City of Phoenix (Am. Compl., Doc. #5). Defendants moved for summary judgment (Doc. #39). Plaintiff responded, and Defendants replied (Doc. ## 42, 44). The Court will deny Defendants' motion.

**I.  Background**

Plaintiff's claims arose from the events leading to his arrest on December 18, 2003 (Doc. #5). After Plaintiff exited an automobile, Gantt – who had been following Plaintiff in a patrol car – attempted to approach Plaintiff on foot (Defs.' Statement of Facts ¶¶ 13-15, Doc. #40). Plaintiff alleged that Gantt told him to "Get on the ground, b----, or I'm going to kill you" (Doc. #5 at 4). Plaintiff asserted that Gantt then pointed his gun at Plaintiff's chest and Plaintiff – who was unarmed – approached Gantt in a "surrender-type fashion" (Id.).

Plaintiff claimed that Gantt did not identify himself as a police officer or inform Plaintiff that he was under arrest (Id.). Gantt allegedly tried to knock Plaintiff to the ground, and then sprayed mace in Plaintiff's face. Plaintiff claimed that after Gantt failed to apprehend Plaintiff, he tried to run Plaintiff over with his car (Id.).

Plaintiff stated that he was then apprehended by Kartchner, who kicked Plaintiff in the neck, face, stomach and back, then used a taser gun on him, and finally sprayed mace at Plaintiff (Id.). Plaintiff alleged that he suffered a dislocated shoulder, a chipped tooth, and numerous bruises and lacerations. He filed this civil rights action against the two officers alleging that their excessive use of force during arrest violated his constitutional rights.[1]

Defendants moved for summary judgment on the basis that: (1) Plaintiff failed to allege a claim against Defendants in their official capacities; (2) verbal threats do not rise to a constitutional violation; (3) Defendants' actions were reasonable thus there exists no constitutional violation, and even if a violation were found, they are entitled to qualified immunity; and (4) Plaintiff's punitive damages claim is barred under state law because Defendants were public employees acting within the scope of their employment (Doc. #39).

In response, Plaintiff argued that he has in fact alleged a claim against Defendants in their official capacities and that verbal abuse rises to a constitutional violation when damages occur (Doc. #42). Plaintiff further argued that qualified immunity is not warranted because the facts demonstrate unconstitutional behavior by Defendants, and that the subsequent dismissal of the charges against him supports his claim for punitive damages.

Defendants' reply memorandum reasserted the claims set forth in their motion and contended that Plaintiff failed to provide any evidence to support his arguments (Doc. #44).

**II.  Legal Standard**

    **A.  Summary Judgment**

---

[1] Upon screening, the Court dismissed the City of Phoenix Police Department as a Defendant (Doc. #8).

1    A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. If the moving party meets its initial responsibility the burden then shifts to the opposing party who must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

When considering a summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence must be admissible. Fed. R. Civ. P. 56(e). And the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

**B. Excessive Force**

A Fourth Amendment claim of excessive force is analyzed under the reasonable standard set forth by the Supreme Court in Graham v. Connor, 490 U.S. 386 (1989). The analysis is objective; whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them. Id. at 397. The reasonableness of a defendant's actions depends on factors such as the severity of the crime at issue, the threat the suspect

- 3 -

1  posed, and whether the suspect is actively resisting arrest. Id. at 396. Determining whether
2  force is reasonable requires a "careful balancing of the nature and quality of the intrusion on
3  the individual's Fourth Amendment interest against the countervailing government interests."
4  Id. at 396 (quotations omitted). Because this balancing test "nearly always requires a jury
5  to sift through disputed factual contentions, and to draw inferences therefrom," summary
6  judgment in excessive force cases should be "granted sparingly." Smith v. City of Hemet,
7  394 F.3d 689, 701 (9th Cir.), cert denied, 545 U.S. 1128 (2005); see also Liston v. County
8  of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (noting that the reasonableness of force
9  used is ordinarily a question of fact for the jury). If the evidence, viewed in the light most
10 favorable to Plaintiff, could support a finding of excessive force, granting summary judgment
11 is not appropriate. Smith, 394 F.3d at 701.

**III. Analysis**

    **A. Excessive Force Claim**

In support of their motion, Defendants proffer the copies of two police reports concerning the incident at issue (Exs. 1-2, Doc. #40). These police reports are not admissible evidence. There is no accompanying verification by the custodian of records, nor is there an affidavit from either Defendant describing the 32 pages of police reports. Finally, much of the information in the reports is made up of witness statements and is therefore hearsay.

Defendants also submit the sworn statement of a former police officer and police chief, Bennie R. Click, who reviewed three police reports and police photographs related to the underlying incident (Id., Ex. 3). In Click's opinion, Defendants' use of force was not reckless and any injuries suffered by Plaintiff were the direct result of his own actions (Id. at 8-9). This testimony, however, addresses an issue that is well within "lay competence." See Pena v. Leombruni, 200 F.3d 1031, 1034 (7th Cir. 1999) (trial judge properly excluded expert testimony in an excessive force case where the issue was whether the danger posed by the suspect was sufficiently lethal and imminent to justify the use of deadly force). Under Rule 702 of the Federal Rules of Evidence, expert testimony is admissible only if it will "assist the trier of fact." Here, the disputed issues include whether Plaintiff posed a serious

1  threat and whether Gantt attempt to run Plaintiff over with his car.  There is no need for
2  "specialized knowledge" to decide these issues; indeed, they are precisely the sort of issues
3  that lay people are equipped to resolve.[2]

4        In opposing Defendants' motion, Plaintiff proffered a copy of the Citizen Complaint
5  filed against Gantt and Kartchner in connection with the incident (Ex. 1, Doc. #43).  This
6  complaint includes an investigative report, numerous interviews with witnesses, and the
7  reviewing officer's conclusion and recommendation.  Plaintiff's Citizen Complaint is
8  similarly inadmissible evidence.[3]  However, in his Amended Complaint Plaintiff alleged that
9  after he attempted to surrender, Gantt tried to knock him to the ground and sprayed mace in
10 his face (Doc. #5 at 4).  He also alleged that Gantt attempted to run over him with a car, that
11 Kartchner brutally assaulted him by kicking him on various parts of his body, and that
12 Kartchner tased him three times (Id.).  Plaintiff's Amended Complaint is properly verified
13 and sets forth specific facts based on personal knowledge and admissible as evidence.  See
14 Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).  As such, the Amended Complaint
15 is treated as an opposing affidavit under Fed. R. Civ. P. 56.  See id.; McElyea v. Babbitt, 833
16 F.2d 196, 197-98 (9th Cir. 1987).  Defendants have failed to submit admissible evidence to
17 demonstrate the absence of a genuine issue of material fact regarding Plaintiff's claims.
18 Consequently, summary judgment will be denied.

19       **B. Official Capacity Claim**

---

[2]The Court's decision regarding Click's testimony at the summary judgment stage does not necessarily preclude his testimony at trial.  Defendants may attempt to proffer expert testimony regarding force employed by police officers if they can show that the expert is properly credentialed and the testimony complies with Fed. R. Evid. 702.  See Champion v. Outlook Nashville, Inc., 380 F.3d 893, 907-09 (6th Cir. 2004).

[3]Defendants object to almost all of Plaintiff's Statement of Facts on various grounds (Doc. #45).  To the extent that Plaintiff relies on this inadmissable evidence to support his Statement of Facts, Defendants' objections are sustained; however, their objections are otherwise overruled.

1  Defendants contend that the claims against them in their official capacity must fail
2  because Plaintiff did not allege that he suffered a constitutional injury due to a policy of the
3  City (Doc. #39 at 6). In his response memorandum, Plaintiff argues both that Defendants
4  violated the "General Policy" of their office, and that the alleged constitutional violation
5  occurred as a result of an official policy (Doc. #42 at 2-3). Attached to his response is a copy
6  of the Phoenix Police Department Operations Order 1.5, which governs use of force policies
7  (Id., Ex. 2). But Plaintiff does not explain how this evidence supports his claim against
8  Defendants in their official capacities. Nevertheless, in view of the limited record, the Court
9  will deny summary judgment on this issue.

### C. Qualified Immunity Defense

Defendants claim that they are entitled to qualified immunity. If a defendant claims qualified immunity, the court must make two distinct inquires, the "constitutional inquiry" and the "qualified immunity inquiry." See Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002). The "constitutional inquiry" asks whether, when taken in the light most favorable to the non-moving party, the facts alleged show that the official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If so, a court turns to the "qualified immunity inquiry" and asks if the right was clearly established at the relevant time. Id. at 201-02. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201.

As discussed *supra*, the Court has determined that disputed facts, viewed in the light most favorable to Plaintiff, create a triable issue of fact regarding whether Defendants used excessive force during arrest. The second step of the Saucier analysis requires Defendants to demonstrate that the use of unreasonable force in the execution of the arrest did not violate clearly established constitutional law.

Defendants argue that the constitutional violation alleged by Plaintiff was not clearly established at the time of the underlying incident (Doc. #39 at 8-9). A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand

- 6 -

1 that what he is doing violates that right." Kennedy v. City of Ridgefield, 439 F.3d 1055,
2 1065 (9th Cir. 2006) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). It is not necessary
3 that there be a prior case with the identical facts showing that a right is clearly established,
4 it is enough that there is preexisting law that provides a defendant "fair warning" that his
5 conduct was unlawful. Kennedy, 439 F.3d at 1065. Individuals have a right to be free from
6 the use of excessive force during an arrest. See Mendoza v. Block, 27 F.3d 1357, 1361-62
7 (9th Cir. 1994). The use of weapons, restraining individuals by force, and throwing
8 individuals on the ground is a violation of the Fourth Amendment where the arrested
9 individual did not resist arrest and there was not a risk to the safety of the arresting officers.
10 See McKenzie v. Lamb, 738 F.2d 1005, 1010-11 (9th Cir. 1984); see also LaLonde v. County
11 of Riverside, 204 F.3d 947, 961 (9th Cir. 2000) (finding that any reasonable officer would
12 know that the continued use of such weapons (e.g., pepper sprays, police dogs) in a situation
13 where the arrestee is rendered helpless constitutes excessive force). Plaintiff presents
14 evidence that these were the circumstances of his arrest.

15       In light of the established state of the law at the time in question, Defendants had "fair
16 warning" that their alleged treatment of Plaintiff was unconstitutional. Because there are
17 triable issues of fact as to whether the force used to arrest Plaintiff was unreasonable, and
18 because Defendants had notice that their alleged conduct was unconstitutional, Defendants
19 are not entitled to qualified immunity at this stage of the litigation.

20 **IV. Damages**

21       Plaintiff requested an award of compensatory and punitive damages in the amount of
22 seven million dollars (Doc. #5 at 7). A jury may award punitive damages under § 1983 either
23 when a defendant's conduct is driven by evil motive or intent, or when it involves a reckless
24 or callous indifference to the constitutional rights of others. Dang v. Cross, 422 F.3d 800,
25 807 (9th Cir. 2005) (quotation omitted). Defendants contend that punitive damages are not
26 proper because the evidence does not demonstrate this type of conduct or indifference to
27 Plaintiff's constitutional rights (Doc. #39 at 9). Defendants also argue that Arizona law bars
28

- 7 -

1 a punitive damages claim against them because they were acting within the scope of their
2 employment (Id.). The Court finds that on the question of unreasonable force during arrest,
3 there are sufficient facts from which a reasonable jury could infer that the punitive damages
4 standard was met. Defendants' request for summary judgment on this point will be denied.

5 **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. #39) is
6 **denied**.

7 **IT IS FURTHER ORDERED** that pursuant to the Scheduling Order (Doc. #21) the
8 joint proposed pretrial order shall be filed no later than 30 days from the date this order is
9 filed.

10 DATED this 13th day of March, 2007.

_____
Mary H. Murguia
United States District Judge

- 8 -